IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA**,

Plaintiff,

v.

**AUREA VAZQUEZ-RIJOS, ET AL.**,

Defendants.

Crim. No. 08-216/15-562 (DRD)

**OPINION AND ORDER**

The two cases before the Court are borne of a sequence of events dating back as far as September, 2005. The relevant sequence of events culminated on September 24, 2015, upon the arrest of Defendant Aurea Vazquez-Rijos in Madrid, Spain. The United States filed two separate criminal actions, 08-216 (DRD) and 15-562 (DRD), charging the defendants with various offenses alleged to have occurred between those two dates. The United States now moves to consolidate the indictments whereas Defendant Charbel Vazquez-Rijos has moved the Court have his charges tried separate from those of the other defendants. For the reasons provided below, the Court **DENIES** the United States' *Motion to Consolidate* (Docket No. 648) and **GRANTS** Defendant Charbel Vazquez-Rijos' *Motion to Sever Count* (Docket No. 681).[1]

### I. FACTUAL ALLEGATIONS[2]

*The Murder-for-Hire Conspiracy*

On March 18, 2005, Aurea Vazquez-Rijos ("Aurea") married Adam Anhang-Uster ("Adam"), a Canadian businessman and real estate developer living in Puerto Rico. Per the indictment, Adam allegedly had an estimated net worth of approximately $24,000,000.00 at the time and the two signed a pre-nuptial

---

[1] Unless otherwise stated, the docket entry numbers provided throughout this *Opinion and Order* correspond to case 08-216 (DRD).
[2] Keeping with the defendants' presumption of innocence, the Court recites the facts as alleged in the indictments (Docket Nos. 3, 129, and 145) without passing judgment on the plausibility or truth of the allegations.

1

agreement providing for the division of assets, spousal support, and the adjudication of Adam's inheritance rights in the event of his death. On September 21, 2005, Adam filed a petition to dissolve the pair's marriage.

On September 18, 2005, three days prior to Adam filing for dissolution of the marriage, Aurea met with her sister, Marcia Vazquez-Rijos ("Marcia"); her sister's boyfriend, Jose Ferrer-Sosa ("Jose"); and Alex Pabon-Colon ("Alex") at the Pink Skirt, a restaurant in Old San Juan, Puerto Rico owned by Aurea. The four discussed the possibility of Alex inflicting a beating upon Adam. Three days later, on September 21, the day of Adam's filing, Aurea and Jose again met with Alex. Aurea and Jose proposed that Alex murder Adam in exchange for a payment of $3,000,000. Aurea, Jose, and Marcia agreed to notify Alex of the time and place where the murder was to take place. Aurea offered money to Alex for the latter to buy a firearm to use in the murder. Alex was not able to buy the weapon.

On September 22, 2005, Aurea phoned Adam thirteen (13) times in order to convince Adam to dine with her at the Pink Skirt. The pair drove from Adam's office to Old San Juan. Around this time, Jose informed Alex that Aurea and Adam were at the Pink Skirt and that the murder was to take place that evening. While the pair were walking back to the parking garage, they were intercepted by Alex at the corner of San Justo and Luna streets in Old San Juan. Alex stabbed Adam several times while Aurea watched. Aurea then instructed Alex to injure her in order to give the appearance that Adam's murder was the result of a robbery gone wrong.

Sometime in March of 2006, Alex wrote a letter to Aurea, Jose, and Marcia in an attempt to collect on the agreed-upon sum for Adam's murder. The letter was hand-delivered to the Pink Skirt by a person unknown to the Court at this time. Marcia received the letter and advised the person delivering the letter that they did not have the money to pay him.

### *The Flight*

Sometime in 2006, Aurea moved to Florence, Italy. While in Italy, Aurea went by the name "Aurea Dominicci." On June 4, 2008, the grand jury returned an *Indictment* (Docket No. 3) against Aurea charging

2

her with conspiracy to commit murder-for-hire. That same date, Magistrate Judge Camille Velez-Rive issued a warrant for Aurea's arrest.

Beginning on or around August of 2011, Aurea; her brother, Charbel Vazquez-Rijos ("Charbel"); her sister, Marcia; her mother; and a person unknown to the Court at this time plotted to dupe the Jewish Community of Florence, Italy into certifying that Aurea and her daughters were of Jewish descent, thus enabling her to move to Israel. On June 19, 2012, after receiving falsified documentation prepared in concert by the aforementioned individuals, the Jewish Community of Florence issued a letter certifying that Aurea and her two daughters were Jewish and registered members of the Jewish Community in Florence.

On August 31, 2012, Charbel incorporated Glatt Kosher Traveller's Inc. in the Puerto Rico State Department. Charbel also opened a United States Post Office Box for the corporation, applied for a certificate of registry in the Puerto Rico Treasury Department, and obtained an IRS Employer Identification Number for the corporation. Aurea used the corporation as a means of generating income while living in Italy. On September 24, 2015, authorities arrested Aurea in Madrid, Spain.

## II. PROCEDURAL BACKGROUND

On June 4, 2008, the grand jury returned an *Indictment* (Docket No. 3) against Aurea Vazquez-Rijos and Alex Pabon-Colon. Both defendants were charged with two counts of violating 18 U.S.C. §1958, conspiracy to use interstate commerce facilities in the commission of murder-for-hire and use of interstate commerce facilities to commit murder for hire. The government alleged Defendant Vazquez-Rijos hired Defendant Pabon-Colon to murder her husband, Adam Anhang-Uster, for financial gain. The government posits Aurea stood to inherit significantly more money as a surviving widow than a divorcée.

On July 29, 2013, the government filed a *Superseding Indictment* (Docket No. 129) against Aurea Vazquez-Rijos, Alex Pabon-Colon, Jose Ferrer-Sosa, and Marcia Vazquez-Rijos. The four defendants were charged with two counts of violating 18 U.S.C. §1958, conspiracy to use interstate commerce facilities in the

3

commission of murder-for-hire and use of interstate commerce facilities to commit murder for hire. The allegations were expanded to include the fact that Defendant Vazquez-Rijos enlisted the assistance of her sister, Marcia Vazquez-Rijos, and her boyfriend, Jose Ferrer-Sosa, to hire Pabon-Colon to murder her husband.

On August 15, 2013, the government filed a *Second Superseding Indictment* (Docket No. 145) against Aurea Vazquez-Rijos, Alex Pabon-Colon, Jose Ferrer-Sosa, Marcia Vazquez-Rijos, and Charbel Vazquez-Rijos. The charges and allegations against Aurea, Alex, Jose, and Marcia remained the same. \ Charbel Vazquez-Rijos, Aurea's brother, was charged with one count of violating 18 U.S.C. §1623, perjury before the grand jury, for allegedly falsely declaring before the grand jury that he never met Alex Pabon-Colon.

On September 9, 2015, the government filed an *Indictment* (15-cr-562, Docket No. 1) charging Charbel with one count of endeavoring to obstruct, influence, and impede the due administration of justice, in violation of 18 U.S.C. § 1503; one count of tampering with official proceedings, in violation of 18 U.S.C. § 1512(c)(2); and one count of concealing a person from arrest, in violation of 18 U.S.C. § 1071. The indictment stemmed from Charbel's assistance of Aurea in a purported attempt to evade authorities by moving to Italy and, later, endeavoring to relocate to Israel.

On February 2, 2017, the government filed a Superseding Indictment (15-cr-562, Docket No. 34) against Charbel Vazquez-Rijos. The government dropped the prior charge of concealing a fugitive. Instead, Count Three charged Charbel with conspiracy to obstruct the due administration of justice, in violation of 18 U.S.C. §371. Charbel allegedly participated in a conspiracy to submit false documentation to the Jewish Community of Florence, Italy in hopes of falsely portraying Aurea and her daughters as Jewish.

On March 31, 2017, the United States filed a *Motion to Consolidate Cases* (Docket No. 648). The government moved to consolidate both indictments for trial averring that the facts of 15-562 (DRD) overlapped with the facts underlying the United States' theory regarding Aurea Vazquez-Rijos' flight to avoid

4

prosecution as being proof of guilt. The government posits the Court should try both cases jointly because the proof of consciousness of guilt is relevant to case 8-216.

On April 17, 2017, Aurea filed a *Response in Opposition to Motion to Consolidate Cases* (Docket No. 665). She argued the underlying events in both indictments are not part of the same series of events as the allegations in 8-216 and 15-562 do not constitute a joint criminal enterprise. Aurea asseverates the government is attempting to try her for offenses of which she is not charged.

On April 27, 2017, Charbel filed a *Response in Opposition to Motion to Consolidate Cases*, (Docket No. 680). Charbel alleged the jury would not be in a position to adjudicate the facts of each offense separately if the indictments are consolidated. He averred the charges are different in nature, participants, victims, locations, and time frames and, accordingly, most of the testimony provided at trial would be irrelevant to Charbel's charges.

On that date, Charbel also filed a *Motion to Sever* (Docket No. 681). Charbel requested the Court sever Count Five of indictment 8-216 and try it together with the charges brought under 15-562. As the sole defendant charged in Count Five of 08-216, Charbel posits that he would be severely prejudiced by the spillover effect of being tried for a nonviolent offense together with the murder-for-hire defendants.

On May 8, 2017, the government filed an omnibus *Reply to Responses in Opposition of Consolidation and Opposition to Severance* (Docket No. 693). The government assured the Court that Charbel's motive in helping Aurea to escape from murder-for-hire prosecution is sufficient basis for joinder. Moreover, the government countered Charbel's argument regarding the indictments' difference in victims by averring that Adam Anhang-Uster's family continues to be victimized by Charbel's actions as their Aurea, who allegedly hired their son's murderer, was not apprehended until ten years after his murder. Lastly, the government alleged the potential prejudice posed by spillover evidence is insufficient to warrant separate trials.

5

On May 8, 2017, Marcia filed an *Opposition to the Government's Second Motion for Consolidation* (Docket No. 696). Marcia argued the government has not linked the murder-for-hire offenses in time, space, or subject matter with the obstruction of justice and tampering with official proceedings charges. Marcia argues the the jury will quickly realize the initials "M.V.R.", mentioned throughout the 15-562 indictment, represent Marcia Vazquez-Rijos, although she is not charged in this case. Like Aurea, Marcia posits the government is attempting to try her for crimes with which she is not charged.

### III.     ANALYSIS

*Motion to Consolidate*

The government seeks to consolidate indictments 08-216 and 15-562 for trial. The government argue the murder-for-hire and obstruction of justice counts consist of the same series of events and should be tried together. Federal Rule of Criminal Procedure provides for the joinder of offenses when the offenses "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). The same rule provides for the joinder of defendants "defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). The Court must be satisfied the "counts meet one of the conditions already quoted, and those conditions, although phrased in general terms, are not infinitely elastic." *United States v. Randazzo*, 80 F.3d 623, 627–28 (1st Cir. 1996).

Courts typically construe the rules "generously in favor of joinder." *United States v. Boulanger*, 444 F.3d 76, 87 (1st Cir. 2006)(citing *United States v. Meléndez,* 301 F.3d 27, 35 (1st Cir.2002)). "In determining whether counts are properly combined for trial, we historically have considered whether the charges are laid under the same statute, whether they involve similar victims, locations, or modes of operation, and the time frame in which the charged conduct occurred." *United States v. Taylor*, 54 F.3d 967, 973 (1st Cir. 1995)(citing *United States v. Chambers,* 964 F.2d 1250-51 (1st Cir.1992) and *United States v. Gray,* 958 F.2d 9, 14 (1st

Cir.1992)). However, "'[s]imilar' does not mean 'identical,' and we assess similarity in terms of how the government saw its case at the time of indictment." *Boulganger, id.* (internal citations omitted).

Consolidation of the indictments would lead Defendant Charbel Vazquez-Rijos down a perilous path of jury confusion. A cursory reading of both indictments prompts the conclusion that the facts relayed together above are the result of two distinct series of events with related protagonists. The first series of events gave rise to the indictment of Aurea, Marcia, Jose, and Alex for the murder of Adam Anhang-Uster. While only Alex is alleged to have provided the fatal stab wounds, the Vazquez-Rijos sisters and Ferrer-Sosa conspired to hire Alex to commit the murder, which they understood would give them access to Anghang-Uster's fortune.

Pursuant to the indictment in 15-562, the second series of alleged criminal acts began in August of 2011, nearly six years after the murder of Adam Anhang-Uster. The indictment charges Charbel with conspiring with Aurea, Marcia, and several other individuals to conceal Aurea from the authorities by duping the Jewish Community of Florence into certifying that Aurea and her daughters were Jewish, enabling their flight to Israel. Charbel is also charged with establishing and duly incorporating Glatt Kosher Traveller's, Inc. in Puerto Rico on or around August 31, 2012, nearly seven years after the murder.

The Court first states the obvious: (1) there is a significant time gap between the events giving rise to the two indictments and (2) the events occurred on two separate continents. The stark differences in both time and location weigh against consolidation as the witnesses and documentary evidence to sustain the charges of the two indictments will be substantively different. The Court turns to the remaining analytical factors.

The two indictment are predicated upon statutes that are in no way similar. Indictment 08-216 charges a violent offense—murder—in one of its most sinister forms—for hire. This crime is punishable by death, although no defendant faces the death penalty herein. On the other hand, indictment 15-562 charges crimes entailing dishonesty and obstructive conduct towards the authorities. These types of crimes generally

give way to short sentences. Trying offenses together where the elements of the offenses and potential sentences are so distinct also weighs against consolidation.

The victims of the charged offenses are also distinguishable. The Merriam-Webster dictionary defines a victim as "one that is injured, destroyed, or sacrificed under any of various conditions" or as "one that is tricked or duped." *Victim Definition*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/victim (last visited Jun. 14, 2017). The government argues Adam Anhang-Uster's parents continue to be victimized by those who concealed Aurea from capture. However, as stated above, the requirements for joinder, "are not infinitely elastic." *Randazzo*, 80 F.3d 628. Charbel helped dupe federal law enforcement, international law enforcement, and the members of the Jewish Community of Florence, not Anghang-Uster's parents.

The government favors that the Court consolidate for judicial efficiency purposes, as they argue the evidence relating to Aurea's efforts to evade capture, which gave rise to 15-562, is relevant to prove consciousness of guilt in 08-216. Nevertheless, "Congress did not provide for joinder for unrelated transactions and dissimilar crimes merely because some evidence might be common to all of the counts." *Randazzo*, *id*. The limited amount of witnesses needed to prove the charges in 15-562 pale in comparison to the amount of witnesses, both factual and experts, necessary to prove guilt beyond a reasonable doubt as to the murder-for-hire counts.[3] Most importantly, the evidence of the murder-for-hire scheme is not probative of any of the elements of the offenses charged in 15-562. The high risk of prejudicial spillover evidence and guilt-by-association if Charbel is tried with his sisters, who are accused of violent crimes, is too great to ignore.

The government's final argument, that the events of the two indictments are part of a series of events, falls similarly short. There is a seven-year gap between the two charged schemes. The aim of the second scheme, to evade authorities, is distinguishable from the first scheme, to use facilities of interstate commerce

---

[3] An additional factor considered by the Court is the amount of CJA fees to which counsel for Charbel for hours will be entitled for his hours spent at trial listening to testimony by witnesses that are of no relevance to his client's charges.

8

to commit murder-for-hire. The first scheme had the overreaching goal of gaining access to Anhang-Uster's fortune. Marcia, Aurea, Jose, and Alex participated in this scheme while Charbel is not mentioned in connection with any of the events leading up to Anghang-Uster's murder. Separate trials would place the jury in a better position to adjudicate the charges against Charbel without grouping him together with his sisters' plot to commit murder-for-hire. Accordingly, the Court finds the fact that evidence may be common to both trials does not override the fact that the analytical factors proscribed by the First Circuit in *Taylor* all weigh heavily against consolidation. The United States' *Motion to Consolidate Cases* (Docket No. 648) is hereby **DENIED**.

### *Motion for Severance*

Having ruled against consolidation, the Court must weigh the merits of Defendant Charbel Vazquez-Rijos' motion to sever Count Five of the *Second Superseding Indictment* in 08-216, perjury before the grand jury, and try the aforementioned count together with the counts charged in 15-562. "If the joinder of offenses or defendants in an indictment . . . or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a) ("Rule 14"). Generally, "defendants who are properly joined in an indictment should be tried together." *United States v. Floyd*, 740 F.3d 22, 36 (1st Cir. 2014). This rule has particular weight in conspiracy cases where severance "will rarely, if ever, be required." *Id*. (quoting *United States v. Flores–Rivera,* 56 F.3d 319, 325 (1st Cir.1995) (internal quotation marks omitted).[4] Charbel is not charged in the murder-for-hire conspiracy and, as a result, faces a slightly smoother road than his codefendants.

---

[4] The Court urges counsel for Defendant Marcia Vazquez-Rijos to have these principles firmly in mind when preparing her Motion for Severance. *See id.* at 37("Demonstrating unfair prejudice sufficient to require severance of coconspirators' trials 'is a difficult battle for a defendant to win.'").

9

Defendant must demonstrate that denying severance will deprive him of a fair trial, resulting in a miscarriage of justice. *United States v. Soto-Beniquez*, 356 F.3d 1, 29 (1st Cir. 2003) (citing *United States v. Baltas,* 236 F.3d 27, 33 (1st Cir.2001)). "The question of whether joinder of offenses unduly prejudices a defendant is addressed to the district court's sound discretion." *United States v. Richardson*, 515 F.3d 74, 80–81 (1st Cir. 2008)(citing *United States v. Casas,* 425 F.3d 23, 36 (1st Cir.2005); *United States v. Alosa,* 14 F.3d 693, 694–95 (1st Cir.1994); *and United States v. Fenton,* 367 F.3d 14, 22 (1st Cir.2004)). In *Zafiro v. United States*, the Supreme Court explained that district courts should only grant a severance request if "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. 534, 538-39 (1993). After making an initial finding of the potential prejudiced posed by joinder, "the district court has a duty to weigh the prejudice . . . against the expense and inconvenience of separate trials." *United States v. Small*, 423 F.3d 1164, 1181 (10th Cir. 2005), cert. denied., 546 U.S. 1190 (internal quotations and citations omitted); *see United States v. Blankenship*, 382 F.3d 1110, 1120 (11th Cir. 2004)(same); *United States v. Solis*, 299 F.3d 420, 441-42 (5th Cir. 2002)(same).

The Court holds the facts of this case warrant severance of Count Five. As discussed above, the evidence relevant to the murder-for-hire counts is inadmissible to prove the perjury count. In addition to being inadmissible to prove the perjury charges, there is great potential for prejudice if the Court denies severance. A defendant tried for perjury together with four defendants accused of murder-for-hire stands to suffer greatly from the vices of guilt-by-association and spillover evidence.

Aside from the potential prejudice factor, severance of Count Five and its consolidation with the charges in 15-562 would serve the interests of judicial efficiency. The charges in 15-562 are similar to Count Five of 08-216 as they are all offenses which entail degrees of dishonesty towards the authorities. These implicate similar statutes and "involve similar victims, locations, [and] modes of operation" as well as a similar location. *United States v. Taylor*, 54 F.3d 967, 973 (1stCir. 1995). Thus, instead of the Court presiding over

a trial where dozens of witnesses testify regarding a murderous plot and one or two witnesses testify about an isolated incident of perjury before the grand jury, the Court will preside over a trial where all witnesses' testimony is probative of the underlying charges. Most importantly, because a separate trial is already scheduled for Charbel's charges under 15-562, the additional witnesses needed to prove the perjury charge will not substantially alter the course of the existing proceedings. Accordingly, the Court **GRANTS** Defendant Charbel Vazquez-Rijos' *Motion to Sever* (Docket No. 681).

### IV. CONCLUSION

For the reasons provided above, the Court finds the events giving rise to indictments 08-216 and 15-562 do not constitute the same series of events and are, therefore, not subject to being tried together. Thus, the United States' *Motion to Consolidate* (Docket No. 648) is **DENIED**. Moreover, the potential prejudice posed by spillover evidence if Count Five is tried together with Counts One through Four of indictment 08-216 outweighs the benefit of consolidation for trial. Consequently, Defendant Charbel Vazquez-Rijos' *Motion to Sever* (Docket No. 681) is **GRANTED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 19th day of June, 2017.

/s/ Daniel R. Dominguez
DANIEL R. DOMINGUEZ
U.S. DISTRICT JUDGE